■ In the Matter of MITCHELL KURK, Respondent, v. MEDICAL SOCIETY OF THE COUNTY OF QUEENS, INC., Appellant.— In a proceeding under article 78 of the CPLR to review the denial by the Medical Society of the County of Queens, Inc., of an application by petitioner for admission to membership on the ground that he did not qualify in that he had not completed a four-year course in a college of medicine, the Society appeals from a judgment of the Supreme Court, Queens County, entered July 6, 1965, which (a) granted the application and (b) directed it forthwith to admit petitioner to membership. Judgment reversed on the law with costs, and application denied. No questions of fact were considered. It is expressly provided by statute (Membership Corporations Law, § 173) that, insofar as pertinent, appellant may make such rules and regulations as it deems fit, provided they are not inconsistent with the laws of the State. The prerequisite to membership of four academic years of study in a college of medicine is not only consistent but is in accordance with the laws of the State. Throughout article 131 of the Education Law the distinction between osteopaths and medical doctors is recognized and implemented. Osteopathy is " A system of therapy in which diseases are treated by manipulating the bones and by other manual manipulations intended to restore the deranged mechanism of the body. The official definition of osteopathy

adopted by the American Osteopathic Association is: 'That system of the healing art which places the chief emphasis on the structural integrity of the body mechanism, as being the most important single factor to maintain the well-being of the organism in health and disease.'" (Dorland, American Illustrated Medical Dictionary, 20th ed.). The concept of manipulation of bone structure as important, if not primary, therapy came from one Andrew Taylor Still. It is undenied here that there is contained in the Osteopathic Oath the following: "I will be ever alert to further the application of basic biologic truths to the healing arts and to develop the principles of osteopathy which were first enunciated by Andrew Taylor Still." It is within the province of the State to approve as satisfactory a school of osteopathy to the end that, upon graduation therefrom, an applicant will receive in this State a "D.O." degree or license (Education Law, § 6512, subd. 3). Such a school might not be deemed satisfactory as a college of medicine, leading on graduation to an M. D. license, or vice versa. The differing licenses serve to apprise the public of the differing training of the licensee. The petitioner is an osteopath, who is a graduate of a school of osteopathy. He has received, therefore, a "D.O." license, which is all that he is entitled to. The issuance to him of an M. D. license may possibly be attributed to the fact that a mistake was made in accrediting his representation that he had a medical degree from a purported California college of medicine. It is undisputed that he received the medical degree either by mail or in person without ever having attended the purported college. The members of the appellant are practitioners who have graduated from medical college. It is a medical society. They have every right to maintain it as such (*Hayman* v. *Galveston*, 273 U. S. 414; *Van Campen* v. *Olean Gen. Hosp.*, 210 App. Div. 204, affd. 239 N. Y. 615), unless the appellant is a party to a monopoly, and economic necessity was visited upon petitioner so as to require membership in the medical society (*Matter of Salter* v. *New York State Psychological Assn.*, 14 N Y 2d 100, 106, 107). There is no allegation of monopoly. It is alleged in the petition that admission is sought to enable petitioner, in turn, to qualify for privileges at the hospital nearest his office in Queens County. He does not deny that there are numerous other hospitals in the county which do not require graduation from medical school as a prerequisite; nor that an available osteopathic hospital exists in the City of New York near the Queens County border as well as one in mid-Manhattan. His allegation that denial of admission to appellant Society will cause economic hardship is merely a conclusory one. He has been practicing at the named location in Queens County since about September 1961. Beldock, P. J., Ughetta, Christ and Hill, JJ., concur; Hopkins, J., concurs in the reversal, but votes to direct a trial of the issues, with the following memorandum: In my opinion, the petition states a cause of action (*Falcone* v. *Middlesex County Med. Soc.*, 34 N. J. 582; *Greisman* v. *Newcomb Hosp.*, 40 N. J. 389; note, 63 Yale L. J. 937, 948, 950–953, 967). However, questions of fact were raised in the answer and the affidavits before the court which require a trial (CPLR 7804, subd. [h]). Those questions of fact are: (1) whether the petitioner is under economic stress and materially damaged in the pursuit of his profession, considering the identity and location of hospitals willing to permit petitioner to practice therein; (2) whether the petitioner is recognized as the holder of an M. D. degree by the Board of Regents under its regulations. If either issue of fact is determined favorably to the petitioner, he is entitled to relief under the first issue as a matter of constitutional right (N. Y. Const., arts. I, XI), and under the second issue as a matter of statutory right and qualification under the respondent's by-laws (Membership Corporations Law, §§ 170, 173). [46 Misc 2d 790.]